Robert J. MEZA, Plaintiff–Appellant,

v.

GENERAL BATTERY CORPORATION
and Provident Life and Accident Insurance Company, Defendants–Appellees.

No. 89–1358.

United States Court of Appeals,
Fifth Circuit.

Aug. 20, 1990.

Richard H. Brown, Brown & Brown, Dallas, Tex., for plaintiff-appellant.

W. Ralph Canada, Jr., Hopkins & Sutter, Dallas, Tex., Dennis J. Morikawa, Philadelphia, Pa., for General Battery Corp.

Keith A. Glover, Dallas, Tex., for Provident Life & Accident Co.

Before GOLDBERG, GARWOOD and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

Robert J. Meza ("Meza"), is former member of Local 1049 of the United Autoworkers Union ("Union" or "UAW") and a former employee of General Battery Corp. ("GBC"). Meza brought suit against GBC and Provident Life & Accident Insurance Co. ("Provident") to recover occupational disability and pension benefits set out in a

collective bargaining agreement made between GBC and the Union. In an earlier lawsuit, the Union brought a similar action against GBC and Provident (collectively referred to as "Appellees") for occupational disability benefits on behalf of three named plaintiffs not including Meza. The district court granted summary judgment against the Union for failure to exhaust grievance and arbitration procedures. In the case at bar, the district court ruled that the previous lawsuit was res judicata to Meza's claim for occupational disability benefits and granted summary judgment in Appellees' favor. The district court also granted summary judgment for Appellees on Meza's pension benefit claim for failure to exhaust administrative remedies. This claim was dismissed without prejudice. AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

## FACTS AND PROCEEDINGS BELOW

Meza was employed by GBC from 1970 to 1983, and was a member of Local 1049 of the UAW throughout this period. As a result of work-related exposure to lead and other industrial toxins, Meza suffered brain damage and, beginning in December, 1982, was no longer able to work. Meza was officially terminated as a GBC employee in May, 1983. His Union membership also terminated at that time. In January, 1985, Meza filed a Workman's Compensation lawsuit in Texas state court. The jury found that Meza had sustained an occupational disease during his employment at GBC that rendered him totally and permanently disabled.

On April 8, 1985, the Union filed a lawsuit against Appellees in Texas state court, claiming, *inter alia*, that Appellees singled out and discriminated against three named plaintiffs (not including Meza) by denying them occupational disability benefits set out in the 1981–1984 collective bargaining agreement between the Union and GBC. The complaint also alleged that the three named plaintiffs were members of a representative class of potential beneficiaries under the agreement, and sought class certification. The case was removed to federal district court for the Northern District of Texas. The district court denied class certification because the Union had failed to timely file a petition for certification, but allowed the suit to proceed as to non-class matters. Appellees moved for summary judgment on the ground that the Union and the three named plaintiffs had failed to exhaust contractual grievance and arbitration procedures. Neither the Union nor the individual plaintiffs responded to the motion and summary judgment was granted in Appellees' favor on May 18, 1987.

In December, 1986, and without any knowledge of the pending Union lawsuit, Meza commenced his own action against Appellees. Meza's suit sought three types of benefits allegedly due him under the 1981–1984 collective bargaining agreement between the Union and GBC: (1) Workman's Compensation Supplemental benefits (a benefit that provides the difference between an employee's regular wage and any Workman's Compensation payments for up to eight weeks) set out in Article XVI of collective bargaining agreement; (2) Group Occupational Disability benefits (a fixed weekly payment for occupationally disabled workers with no apparent time limit) set out in Exhibit "C," Article I of the agreement; and (3) a lump-sum payment of his vested Pension Plan benefits referred to in Exhibit "C," Article II of the agreement. Meza had not filed any grievance or pursued any contractual remedies related to these benefits prior to bringing suit.

Appellees filed a series of motions for summary judgment on all claims. Meza also filed motions for summary judgment. In the words of the district court judge, different orders were issued over time to dismiss "piecemeal, various parts of this action as to both Defendants." For instance, on June 24, 1988, the court denied motions for summary judgment filed by Meza and Provident, but granted GBC's summary judgment motion as to Meza's pension benefit claim because Meza had not exhausted administrative remedies provided for in the Pension Plan. On September 26, 1988, the court granted Provident's summary judgment motion as to the pen-

sion benefit claim for the same reasons, and dismissed the claim without prejudice.

In September, 1988, GBC filed a new motion for summary judgment on the occupational disability claim. The motion, which reiterated a res judicata argument raised in GBC's original motion for summary judgment, was submitted with an affidavit from a Union representative stating that the Union fully intended to represent Meza's interests in its prior lawsuit against Appellees. Based on this new evidence, the court ruled that Meza's occupational disability claim was barred by res judicata, and granted summary judgment in GBC's favor on this issue.

Then, in January, 1989, having found that Meza never received a copy of GBC's September summary judgment motion, the district court reconsidered the earlier motions for summary judgment on the occupational disability claim. The court specifically found that the prior suit by the Union was res judicata with respect to occupational disability benefits. Accordingly, the court granted summary judgment in favor of both Appellees on this issue and dismissed Meza's complaint with prejudice.

Finally, in March, 1989, the court granted Appellees' motions for summary judgment on the Workman's Compensation Supplement claim on the ground that Meza had failed to exhaust grievance and arbitration procedures. Like the pension benefit claim, the court dismissed this final claim without prejudice.

Meza concedes the applicability of grievance and arbitration procedures to the Workman's Compensation Supplement claim and does not contest the district court's ruling on this issue. However, Meza appeals the adverse grant of summary judgment on his other two claims. First, Meza contends that the district court erred in barring his occupational disability claim on the basis of res judicata. Meza maintains that he was not a party to the prior lawsuit between the Union and Appellees and that his interests were not adequately represented there. We agree, and reverse the district court's grant of sum-

mary judgment to Appellees on the question of occupational disability benefits.

Additionally, Meza claims that he should not be required to exhaust administrative remedies with respect to his pension benefits because Appellees never provided him with a copy of the Pension Plan or Plan Summary as required by statute. Although Meza acknowledges the general exhaustion requirement, he contends that Appellees' failure to provide him with a copy of the Pension Plan's administrative procedures should excuse him from having to exhaust those procedures. We reject this argument and affirm the district court's dismissal without prejudice of Meza's pension benefit claim.

## DISCUSSION

### I. Res Judicata

#### A. Background and Choice of Law

Appellees contend that the district court properly applied res judicata in dismissing with prejudice Meza's claim for occupational disability benefits. Conversely, Meza argues that he was not a party to the UAW's prior suit, that he was without notice of the suit, that the UAW did not represent his individual interests, and that the proposed class that might have represented his interests in the prior suit was never certified. Accordingly, Meza reasons that he was not bound by the prior judgment, and that the district court improperly dismissed his claim for occupational disability benefits on the basis of res judicata. We agree.

Federal law determines the res judicata effect of a prior federal court judgment. *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1124 (5th Cir. 1987); *Sidag Aktiengesellschaft v. Smoked Foods Prods. Co.*, 776 F.2d 1270, 1273 (5th Cir.1985). Four requirements must be met in order to apply res judicata: (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d

183, 188 (5th Cir.1990); *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir.1983) (en banc); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979) (judgment on the merits in prior suit bars second suit involving same parties or their privies based on the same cause of action). None of the parties to the present action question the district court's jurisdiction in the lawsuit between Appellees and the Union, nor do they contend that the court's summary judgment was not a final judgment on the merits. Thus, two of the four requirements for applying res judicata are undisputedly met.

However, Meza argues that the other two requirements have not been met. He contends that there is insufficient identity between him and the UAW to bind him to the judgment in the prior suit. Meza also argues that a claim for benefits due him under the Collective Bargaining Agreement as a result of his disability is not the same as the claim previously asserted by the UAW. Because there is insufficient identity between the parties and the claims presented, Meza argues that he is not bound by the judgment in the prior lawsuit.

### B. Identity of Parties

It is a fundamental principle of American jurisprudence that a person cannot be bound by a judgment in litigation to which he was not a party. *Martin v. Wilks*, —— U.S. ——, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989); *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940). The prohibition against using the result of prior judicial proceedings to determine the rights of strangers to those proceedings is required by the due process guarantees of the Fifth and Fourteenth Amendments. The popular expression of this principle is that "everyone is entitled to his own day in court."

Against this backdrop of constitutional rights and basic fairness, federal courts have nevertheless held that in certain circumstances judgments can bind persons not party to the litigation in question. At common law, this preclusive effect extended to persons "in privity" with parties to the litigation. Privity is merely another way of saying that there is sufficient identity between parties to prior and subsequent suits for res judicata to apply. Unfortunately, privity has shown itself to be an elusive and manipulable concept; it is nothing more than a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Southwest Airlines v. Texas Int'l Airlines*, 546 F.2d 84, 95 (5th Cir.) (quoting Vestal, *Preclusion/Res Judicata Variables: Parties*, 50 Iowa L.Rev. 27 (1964)), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977); *see also Hardy v. Johns–Manville Sales Corp.*, 681 F.2d 334, 338–39 (5th Cir.1982) ("manipulability of the notion of privity" in collateral estoppel context); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 4448 (1981) (recommends discarding privity label, or retaining only as "a convenient means of expressing conclusions that are supported by independent analysis").

■ For res judicata purposes, this court has held that privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit. *See Howell Hydrocarbons, supra*, 897 F.2d at 188; *Southwest Airlines, supra*, 546 F.2d at 95. In the instant case, Meza is not a successor in interest to any property right litigated in the UAW suit against Appellees. Nor was Meza in control of the original litigation; in fact, he was completely unaware of the UAW suit until well after he had filed his own claim for occupational disability benefits. Thus, Meza would only be in privity with the Union for res judicata purposes if the Union adequately represented his interests in the prior suit.

■ Under the rubric of adequate representation, federal courts have consistently held that a non-party is bound if he autho-

rized a party in the prior suit to represent his interests, or if he was represented as a member of a class or association in the original litigation.[1] Somewhat less settled is the principle, expounded by this court, that a non-party is bound where a party to the original suit is "so closely aligned to the non-party's interests as to be his virtual representative." *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *appeal dismissed,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). Courts have tended to treat authorized representation, class representation, associational representation, and virtual representation as synonymous with adequate representation for res judicata purposes.[2] However, the scope of the preclusive effect a judgment in these so-called "representative" lawsuits is not always clear; as the Supreme Court stated, "the judgment in a 'class' or 'representative' suit ... may bind members of the class or those represented who were not made parties to it," but only "to an extent not precisely defined by judicial opinion."[3]

Meza argues that the only way in which the Union could have been an adequate representative is if it had represented him as a member of a class certified under Rule 23 of the Federal Rules of Civil Procedure, or at the very least, if the Union had complied with the principles underlying Rule 23. Meza points out, and it is undisputed, that the Union failed in its attempt to certify a class in the prior action against appellees. Furthermore, Meza argues that the Union could not have been his associational representative because he was no longer a member when the Union brought its initial action against Appellees. Thus, Meza reasons, the Union was not an adequate representative in the prior suit and therefore was not in privity with him.

Appellees counter with the argument that Meza's claim arises under the 1981–1984 collective bargaining agreement. They point out that labor unions have statutory authority under the Labor–Management Relations Act to bring actions to enforce collective bargaining agreements.[4] Moreover, Appellees argue that the Union brought the original action with the intention of representing all individuals claiming occupational disability benefits under the agreement regardless of whether or not

**1.** Section 41 of the Restatement (Second) of Judgments states:

> (1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is:
> (a) The trustee of an estate or interest of which the person is a beneficiary; or
> (b) Invested by the person with authority to represent him in an action; or
> (c) The executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary; or
> (d) An official or agency invested by law with authority to represent the person's interests; or
> (e) The representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member.

Restatement (Second) of Judgments § 41(1) (1980).

This passage was cited with approval by this court in *Southwest Airlines v. Texas Int'l Airlines,* 546 F.2d 84, 96 n. 42 (5th Cir.) (quoting from tentative draft No. 2, 1975), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977). In addition, we noted in *Southwest Airlines* that

"the private representative role is extended only to those whom the parties intended, either expressly or impliedly, to exercise it." *Id.* at 96 n. 44 (quoting Restatement (Second) Judgments § 41 comment). *See also General Foods v. Massachusetts Dep't of Pub. Health,* 648 F.2d 784, 787 (1st Cir.1981) (non-party "who expressly or impliedly gives a party authority to represent him may be bound by the rule of res judicata as though he were a party").

**2.** *See, e.g., Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 864 (5th Cir.1985) ("[T]he concept of 'adequate representation' does not refer to apparently competent litigation of an issue in a prior suit ...; rather, it refers to the concept of virtual representation, by which a nonparty may be bound.") (construing *Southwest Airlines, supra,* 546 F.2d 84); *accord, Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1175 (5th Cir.1987).

**3.** *Hansberry, supra,* 311 U.S. at 42, 61 S.Ct. at 118.

**4.** "Any ... labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States." Labor–Management Relations Act § 301, 29 U.S.C. § 185(b) (1982).

they were current Union members. In support of this argument, Appellees refer to the affidavit of Union representative Joe Roy Hernandez which was submitted with Appellees' motion for summary judgment. In his affidavit, Hernandez stated:

> [T]he Union sought the Court's enforcement of the occupational disability provisions of the Agreement on behalf of all individuals who were injured on the job while employed by GBC between March 1, 1981 and March 1, 1984. The Union did not intend to exclude any individual who fell into this category, even if that individual was no longer employed by GBC, or was not longer a Union member, after March 1, 1984....

> [T]he Union sought the awarding of occupational disability benefits by the Court to all individuals who were injured on the job while employed by GBC between March 1, 1981 and March 1, 1984. The Union did not intend to exclude any individuals who would be entitled to these benefits, even if that individual was no longer employed by GBC or was no longer a Union member, after March 1, 1984.

Appellees urge that the Union's authority to bring suit to enforce the collective bargaining agreement, coupled with its intent to represent those making claims thereunder, provides a sufficient basis for the conclusion that Meza was adequately represented.

These arguments bring into question a controversial aspect of a labor union's representative authority. Stated generally, the issue is whether a union's intent to enforce the collective bargaining rights of its former members, without more, constitutes adequate representation for res judicata purposes. We note an inherent tension in this issue, one that pits the due process rights of former union members against the union's desire to represent employees' rights collectively, and against management's desire to be free from duplicative litigation. Concerns over judicial economy are implicated as well. The analysis we conduct to determine whether res judicata applies does not change, however,

merely because the claim involved arises under a collective bargaining agreement. Identity of parties or privity is still required. We have already concluded that in this case, Meza is in privity with the Union only if the Union adequately represented him in its initial action against Appellees. Because Meza was not represented as a member of a class in the prior lawsuit, we must look to the adequacy of the Union's representation as either an authorized representative, an associational representative, or a virtual representative of Meza's interests.

### 1. The UAW as an "Authorized" or "Associational" Representative

Federal courts have long recognized that individual members of labor unions and other unincorporated associations can be bound by judgments in suits brought by the union or association in their representative capacity. *See Acree v. Air Line Pilots Ass'n*, 390 F.2d 199, 202 (5th Cir.) (union held "proper party" to bring claims on behalf of individual members), *cert. denied*, 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968); *Panza v. Armco Steel Corp.*, 316 F.2d 69, 70 (3d Cir.) (union was "duly constituted representative of its members"), *cert. denied*, 375 U.S. 897, 84 S.Ct. 174, 11 L.Ed.2d 125 (1963). The question in this case, however, is not whether the UAW was duly authorized to represent its members in the original suit against Appellees. Rather, the question is whether the UAW was authorized to represent Meza—who was neither an employee nor a Union member at the time of the original UAW suit.

Appellees rely heavily on *Acree, supra,* and on *Local 117, UAW v. Acme Precision Prods., Inc.*, 515 F.Supp. 537 (E.D.Mich. 1981) for the proposition that union representation is binding on former members. *Acree* is readily distinguishable from the case at bar. In *Acree*, this court decided that an action by a union on behalf of striking members who had been permanently replaced by their employer precluded a subsequent suit brought by the re-

placed employees as a class.[5] The case does not address the issue of a union's authority to represent former members; in fact, the union was striving mightily to force the employer to reinstate its *current* members. Moreover, even though the represented individuals were not active employees at the time of union lawsuit, the union's representation was based on claims that the individuals had been wrongly discharged. This is the classic context in which a union is the proper representative of individuals who are no longer actively employed.[6] By comparison, Meza is not a member of the UAW, nor has he been since his employment with GBC terminated in 1983. He was not a member when the UAW instituted its lawsuit against Appellees in 1985. Furthermore, there has been no allegation whatever that Meza's status as an "ex-employee" is due in any part to wrongful actions on the part of GBC. Neither Meza nor the UAW alleged that Meza was the victim of a wrongful discharge. The Union did not seek Meza's reinstatement, nor could it have done so; as a totally disabled person, Meza seems to fall squarely in the category of persons who have "ceased work without expectation of further employment." *See Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 168, 92 S.Ct. 383, 392, 30 L.Ed.2d 341 (1971) (for purpose of determining union representation, definition of "employee" includes "members of the active work force available for hire" but not "individual who has ceased work without expectation of further employment"). Thus, the reasoning in *Acree* is inapposite to the factual situation in this case.

Appellees' reference to *Acme* is more closely on point. In *Acme*, a union brought suit to enforce, *inter alia*, collective bargaining agreement rights to health insurance premiums for retirees. The employer moved to dismiss this claim because the union had not joined individual retirees as party plaintiffs. The court denied the motion, holding that the union had standing to represent the retirees' interests. Furthermore, the court stated that a judgment on the health insurance premiums claim would be res judicata to any subsequent claims brought by individual retirees, even though they were not individually notified of or represented in the original suit. The *Acme* court followed the logic of *United Steelworkers of America v. Canron, Inc.*, 580 F.2d 77, 80–81 (3d Cir.1978), a case in which the court upheld a union's standing to represent retirees in seeking arbitration under collective bargaining agreement.

We note the similarities between these cases and the case at bar. Meza claims that the UAW did not represent him because he was no longer an employee of GBC or a member of the UAW when the Union brought its original action. However, in both *Acme* and *Canron*, the union purported to sue on behalf of individual claimants (retirees) who did not fall within the statutory definition of "employees" that a union is ordinarily authorized to represent. *See Allied Chemical, supra*, 404 U.S. at 170, 92 S.Ct. at 393 (retirees not employees for collective bargaining purposes within meaning of National Labor Relations Act). Meza also argues that his claim is not barred by res judicata because he had no notice of the UAW's prior suit. However, in *Acme*, the court concluded that the union could represent retirees even though they were without notice of the lawsuit.[7]

Additionally, the unions in *Acme* and *Canron* were not attempting to bargain for any new rights on behalf of their former members. Rather, the issue was whether the employer had contractually

---

**5.** Specifically, this court held that a prior determination that federal courts were without subject matter jurisdiction over the dispute between the union and the employer was res judicata on the question of jurisdiction over the subsequent class action. *Acree, supra*, 390 F.2d at 203; *see also Flight Engr's Int'l Association, AFL–CIO v. Eastern Air Lines, Inc.*, 359 F.2d 303 (2d Cir. 1966) (original action by union).

**6.** *See infra*, note 9.

**7.** The court analogized the lawsuit to a class action certifiable under F.R.C.P. 23(b)(1)(A) or 23(b)(2). Notice to individual class members is not required if the class is certified under either of these clauses. *See* Fed.R.Civ.P. 23(c)(2).

committed itself to paying the benefits in question. A similar issue is raised in this case, namely, whether Appellees are contractually committed by the terms of the collective bargaining agreement to pay occupational disability benefits to Meza. In both *Acme* and *Canron*, the court found that the union was a proper representative of the retirees' interests. Moreover, in *Acme*, the court specifically stated that a judgment in the union's suit would preclude any subsequent claims by represented individuals. Appellees argue by analogy that the UAW properly represented Meza, and that the judgment in the UAW's suit is res judicata to Meza's action.

Despite these notable similarities, the above-cited cases do not control the outcome here. In *Canron*, the court merely upheld the union's standing to sue on behalf of retired employees. It did not address the issue of res judicata, nor did it inquire into the adequacy of representation provided by the union to its former members. The *Acme* court similarly upheld the standing of a union to sue on behalf of retirees. The court went on to state that the union's action would preclude subsequent suits by represented individuals, but only after finding that the suit was a de facto class action,[8] that the union "vigorously asserted" the retirees' rights, and that the union was "qualified, experienced, and well able to conduct th[e] litigation."

Appellees urge this court to adopt a general rule of law that, in essence, would extend the preclusive effect of res judicata to any case in which a union purported to represent its former members. This we are reluctant to do. Whether a union has standing to represent past members is a different question from whether the union adequately represents them. *Cf. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*, 477 U.S. 274, 290, 106

S.Ct. 2523, 2533, 91 L.Ed.2d 228 (1986) (where association does not adequately represent its members, judgment against association might not preclude subsequent individual claims without offending due process). When an individual terminates his relationship with both employer and union, the union ceases to be his exclusive representative in disputes with the former employer. Such an ex-employee/ex-union member is free to pursue his own claims and make his own settlements with the former employers. *See Allied Chemical, supra*, 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20 (retirees' remedy is individual claim for breach of collective bargaining agreement); *Anderson v. Alpha Portland Indus.*, 752 F.2d 1293, 1297 (8th Cir.) (union is not *exclusive* bargaining representative for retirees) (citing *Allied Chemical, supra*, 404 U.S. at 157, 92 S.Ct. at 383), *cert. denied*, 471 U.S. 1102, 105 S.Ct. 2329, 85 L.Ed.2d 846 (1985); *Local 184, UAW v. Yard–Man*, 716 F.2d 1476, 1484–85 (6th Cir.1983) ("Unlike active employees, retirees face no restrictions whatever in seeking fulfillment of contractual benefits directly from their former employer"), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984); *Toth v. USX Corp.*, 693 F.Supp. 693, 700–01 (N.D.Ill.1988) (retirees and other former members "are outside the union's exclusive representation authority"), *aff'd*, 883 F.2d 1297 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989); *see also Cooper v. General Motors Corp.*, 651 F.2d 249, 250 (5th Cir.1981) (non-members of collective bargaining unit cannot be represented by union). As Judge Easterbrook recently observed:

> "[U]nions may bargain on behalf of [former employees] if the employer is willing, although the [former employees] *need not accept the offer of representation.* Former employees might choose the union as their agent for purposes of

---

**8.** In *Johnson v. General Motors Corp.*, 598 F.2d 432, 435 (5th Cir.1979), this court acknowledged that when a suit is treated like a class action by both the parties and the trial court, "the lack of formal certification does not detract from the validity or res judicata effect of the judgment." However, this is not the situation presented to

us on appeal. There is no indication in the record that the district court treated the original UAW suit as a de facto class action; in fact, once the district court had denied the motion for class certification, it explicitly limited further proceedings to "non-class matters."

implementing or compromising· claims arising under a collective bargaining agreement. It is even possible that employees may assent through the agreement itself tó make the union their agent to resolve all disputes arising out of the implementation of that agreement—disputes that by definition arise during the employment relation—even if they leave work before its end. Such a consent would enable the union and the employer to administer the agreement without the complications caused by a proliferation of parties as employees quit or leave. *Merk v. Jewel Companies,* 848 F.2d 761, 766 (7th Cir.) (emphasis added) (citations omitted), *cert. denied,* 488 U.S. 956, 109 S.Ct. 393, 102 L.Ed.2d 382 (1988). We generally agree with this characterization of the relation between a union and its former members.[9] A union's representative authority does not automatically extend to its former members. Employees who are not exclusively represented by a union are free to choose whether they want the union to represent them. Implicit in this freedom to choose is the freedom to decline such representation. *See Merk,* ·*supra,* 848 F.2d at 761; *cf. Clark Equip. Co. v. International Union, Allied Industrial Workers of America,* 803 F.2d 878 (6th Cir.1986) (in dispute over transfer and seniority rights involving union and non-union shops, non-union employees had choice of independent action or· union representation), *cert. denied,* 480 U.S. 934, 107 S.Ct. 1574, 94 L.Ed.2d 765 (1987); *Local 194, Retail, Wholesale, and Department Store Union v. Standard Brands, Inc.,* 540 F.2d 864 (7th Cir.1976) (because union is not exclusive representative in civil rights suits, union members could choose or decline union representation in Title VII action). Absent some evidence that past members expressly or impliedly authorized the union to proceed in their behalf, there can be no presumption that the Union had authority to act in a representative capacity.

In the instant case, no evidence was presented to show that Meza "chose" the

---

**9.** As Judge Easterbrook astutely noted, employers have legitimate concerns over the "proliferation of parties" that might ensue whenever a union sues on behalf of its active members, while former members proceed on the same or similar cause of action in their own right. At trial, the appellee-employer in *Merk* argued that a finding that the union did not represent its former members "would effectively preclude management from *ever* relying on a Union resolution of a grievance for *anyone* that was not currently employed." *Merk v. Jewel Food Stores Div., Jewel Companies, Inc.,* 641 F.Supp. 1024, 1032 (N.D.Ill.1986), *aff'd,* 848 F.2d 761 (7th Cir.), *cert. denied,* 488 U.S. 956, 109 S.Ct. 393, 102 L.Ed.2d 382 (1988). While these concerns are important, they do not compel the conclusion that former union members must always be bound by·the actions of the union in order to maintain the integrity and viability of labor-management relationships.

Initially, we note that the district court in *Merk* held that a union continues as the exclusive representative of individuals who are "former employees" as a result of the employer's breach of the collective bargaining agreement, as opposed to those who become former employees of their own volition. *Id.* at 1030–31; *see also D'Amato v. Wisconsin Gas Co.,* 760 F.2d 1474, 1475 (7th Cir.1985) (union owes continuing duty to fairly represent employees unjustly fired); *Caputo v. Branch 99, Nat'l Ass'n of Letter Carriers,* 730 F.Supp. 1221 (E.D.N.Y.1990) (union owes continuing duty of fair representation to one who became "former employee" as result of labor dispute); *cf. Acree, supra,* 390 F.2d at 200 (union brought suit seeking reinstatement of striking union members who were replaced).

In addition, there are a number of alternatives available to employers faced with the situation complained of in *Merk.* First, as Judge Easterbrook suggested, a provision expressly authorizing the union to represent past employees could be negotiated as a term of the collective bargaining agreement, and presented to individual employees *as a condition of union membership.* Alternatively, either party could petition the courts to join former union members as individual parties to a suit brought on their behalf by the union. Similarly, the parties could petition the court to certify a class of former members so that the individual claims could be resolved in a single litigation. *See, e.g., Clark Equip. Co. v. International Union, Allied Industrial Workers of America,* 803 F.2d 878 (6th Cir.1986) (employer petitioned for certification of defendant class represented by union in settlement negotiations). This was the route unsuccessfully pursued by the UAW in the first lawsuit at issue here. Each of these alternatives minimizes the exposure of employers to repetitive litigation. At the same time, these alternatives preserve the autonomy of individual former members; some level of notice, participation, and choice is implied in each. We believe that any of these alternatives (or perhaps others) could protect employers from the expense of duplicative lawsuits, while preserving the due process rights of individual former members.

UAW to represent him. Quite the contrary, Meza was completely unaware of the UAW action purportedly undertaken on his behalf. Moreover, there is no evidence to show that Meza expressly consented to being represented by the UAW, or implied his consent by acquiescing in the original UAW action. Again, one cannot acquiesce to something of which one is unaware. The district court stated in its memorandum opinion that the UAW "had the authority to bind the Union *members* and fully intended to represent Meza's interest in the prior suit against GBC, even though Meza was no longer employed by GBC at the time of the prior litigation" (emphasis added). The court also stated that where the Union "brought suit solely as the representative of its *employee-members,* and where the Union had no beneficial interest in any recovery, individual *employees* must be precluded from relitigating the cause of action" (emphasis added). However, it seems clear to us (as it apparently did to the district court) that the UAW's authority to bind extended *only to its members.* The Union's "intent" to bind a former member cannot substitute for consent or a specific grant of authority.[10] Thus, we reject Appellee's argument that the UAW's intent to bind Meza automatically established the Union as Meza's representative, even though Meza claims benefits under a collective bargaining agreement.

### 2. The UAW as a "Virtual Representative"

In certain limited circumstances, this court has held that "a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *Aerojet–General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir.), *appeal dismissed,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). Arguably, if this "close alignment of interests"

existed between Meza and the UAW, there might be sufficient identity of the parties under the doctrine of virtual representation to satisfy the privity requirement of res judicata despite the fact that the UAW acted without Meza's consent.

■ The question of virtual representation is to be kept within "strict confines." *Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1175 (5th Cir.1987) (quoting *Hardy v. Johns–Manville Sales Corp.,* 681 F.2d 334, 339 (5th Cir.1982)). Among the "strict confines" is a requirement that there be "an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." *Benson and Ford, supra,* 833 F.2d at 1175; *Hardy, supra,* 681 F.2d at 340; *Pollard v. Cockrell,* 578 F.2d 1002, 1008 (5th Cir.1978).

In the instant case, there is no express or implied legal relationship between Meza and the UAW. Meza was not a member of the UAW when the Union brought its suit. Nothing in the record supports a conclusion that Meza consented to the Union's representation, or that the Union had a contractual duty to provide such representation. Nor did the UAW have a statutory obligation to represent Meza. *See Central States Pension Fund v. Central Transp.,* 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) (union's duty "is confined to current employees employed in the bargaining unit in which it has representational rights"); *UMWA Health & Ret. Funds v. Robinson,* 455 U.S. 562, 574–75, 102 S.Ct. 1226, 1233–34, 71 L.Ed.2d 419 (1982) ("former members ... may suffer from discrimination in collective-bargaining agreements because the union need not 'affirmatively ... represent [them]") (quoting *Allied Chemical, supra,* 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20). Moreover, even if the UAW volunteered to represent Meza, it is doubtful whether the Union owed him a duty of fair

---

10. "A prior litigant's effort to champion the position asserted by another in a subsequent action is a factor to consider in determining whether the later party is a privy of the earlier party, but this factor alone has never been considered sufficient to warrant denying the later

party his day in court." *Mann v. City of Albany, Ga.,* 883 F.2d 999, 1003 (11th Cir.1989) (citing *Aerojet–General Corp. v. Askew,* 511 F.2d 710 (5th Cir.) *appeal dismissed* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975)).

representation.[11] In light of the foregoing, we cannot see how the UAW could be "accountable" to Meza in any way. Therefore, we conclude that the doctrine of virtual representation has no application in this case.

### 3. The UAW as an "Adequate Representative"

As we noted earlier in this discussion, a precise definition of privity or party identity has eluded the courts. This case illustrates the difficulty of determining when a party's and a nonparty's interests are "close enough" for res judicata to apply. The case is further complicated by the fact that it implicates the scope and nature of labor-management relations with respect to former employees. Management is obviously interested in resolving disputes over the contractual rights of former employees in a single litigation or in negotiations with the union. In addition, the interests of a union may closely parallel the interests of its former members in enforcing the terms of a collective bargaining agreement. We recognize that while a union may not have any contractual or statutory obligation to represent its former members, "it does not naturally follow ... that the union loses all interest in the fate of its [former] members." *Canron, supra*, 580 F.2d 77, 81 (quoting *Rosen v. Public Svc. Elec. & Gas Co.*, 477 F.2d 90, 94 n. 8 (3d Cir.1973)). However, we are not called upon to resolve all of the complications that could arise when unions attempt to act on behalf of their former members. Our task is simply to determine whether, in this case, the UAW adequately represented Meza. We conclude that it did not. We do not go so far as to say that class certification under Rule 23 is the only way in which a union can represent or bind its former members, although we agree that it is one way to ensure that the interests of former union members are adequately represented.

Lacking the mechanism of class certification in this case, we must look to the other possible sources of party identity to decide the question of adequate representation. Because Meza did not authorize the union to represent him, and because the UAW did not represent his interests in any legal sense, we hold Meza is not in privity with the UAW, and that the UAW was not an adequate representative of Meza's interests. Accordingly, Meza can not be bound by the judgment in the prior suit.

### C. Identity of the Claims

In addition to his contention that there was insufficient identity of the parties for res judicata to apply, Meza also argues that identity of claims is lacking between the UAW's prior suit against Appellees and the current action by Meza. Although our disposition of the privity question makes analysis of this argument unnecessary for res judicata purposes, the potential collateral estoppel or issue preclusion implications of this issue warrant brief discussion.

For a prior judgment to have preclusive effect as to a particular issue, the doctrine of collateral estoppel requires that: (1) the issue at stake be identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action. *Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir.1989); *Wehling v. Columbia Broadcasting System*, 721 F.2d 506 (5th Cir. 1983); *Hicks v. Quaker Oats Co.*, 662 F.2d 1158 (5th Cir.1981). Unlike claim preclusion, the doctrine of issue preclusion may not always require complete identity of the parties. *Terrell, supra*, 877 F.2d at 1270; *Wehling, supra*, 721 F.2d at 508.

---

**11.** *See Merk, supra*, 848 F.2d at 767 (union has no duty to represent former members and "[i]f it does not have a duty to represent them at all, it does not have a duty to represent them 'fairly'"); *Toth, supra*, 693 F.Supp. at 702 ("since former employees are not within the bargaining unit, the union owes them no duty of fair representation") (citing *UMWA Health & Ret. Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982)); *cf. Caputo v. Branch 99, Nat'l Ass'n of Letter Carriers*, 730 F.Supp. 1221 (E.D.N.Y.1990) (union owes continuing duty of fair representation to one who became "former employee" as result of labor dispute).

■ Meza contends that the prior lawsuit only decided the claims of the three named plaintiffs, and as such, did not meet the identity of claims requirement for either res judicata or collateral estoppel to apply. However, Appellees claim that the prior suit pertained as much to the correct interpretation of the collective bargaining agreement as it did to any individual claim for benefits. Appellees argued vigorously during oral argument that the applicability of grievance and arbitration procedures to Meza's claim for occupational disability benefits raises an issue of contractual interpretation identical to the one litigated in the prior lawsuit. Moreover, Appellees argue that this issue was actually litigated, and that the district court necessarily decided that *any* claim for occupational disability benefits is subject to mandatory grievance and arbitration procedures. They contend that Meza should not be able to relitigate the district court's contractual interpretation on this issue.

■ From the record presented to us on appeal, however, we cannot conclude that the district court's decision in the initial UAW suit decided the issue of grievance and arbitration proceedings applicable to *former* employees.[12] Although exhaustion of contractual dispute resolution provisions is generally a prerequisite to judicial review of claims arising under a collective bargaining agreement, former employees may not be required to exhaust these remedies as would current employees. *See Anderson v. Alpha Portland Indus., Inc.,* 752 F.2d 1293, 1298 (8th Cir.1985) (construing *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 1851, 80 L.Ed.2d 366 (1984); *United Elec., Radio & Mach. Workers of America v. Amcast Indus.,* 634 F.Supp. 1135, 1139 (S.D.Ohio 1986). We need not and do not resolve the question whether Meza would be barred

from litigating this issue if it had been decided in the prior suit. Rather, we conclude that the applicability of grievance and arbitration procedures to claims of former employers was not decided, and that Meza is free to litigate this issue on remand.

## II. Reformation of the Collective Bargaining Agreement

Appellees argue in the alternative that even if Meza's claim for occupational disability benefits is not barred by res judicata, they are still entitled to summary judgment because the provision of the collective bargaining agreement under which Meza claims was included in the agreement as the result of mutual mistake. Appellees argue that where mutual mistake of the parties is undisputed, the court should use its equitable power of reformation to strike the allegedly mistaken provision from the agreement.

■ Appellee GBC raised this issue in its motion for summary judgment, but the district court decided in Appellees' favor on the basis of res judicata and never addressed the questions of mutual mistake and reformation. Nonetheless, we may affirm a summary judgment on grounds other than those relied upon by the district court when we find in the record an adequate and independent basis for that result. *Brown v. Southwestern Bell Tel. Co.,* 901 F.2d 1250, 1255 (5th Cir.1990); *Schuster v. Martin,* 861 F.2d 1369, 1371 (5th Cir.1988).

In response to Appellees' assertion of mutual mistake and petition for reformation, Meza claims that Appellees failed to raise the defense of mutual mistake in the original suit brought by the UAW, and are therefore precluded from raising it in the instant case. Meza also argues that it

12. The record does not indicate whether the three named plaintiffs in the original UAW suit, Wendell L. Yow, Chester M. Grubbs, and Johnny W. Bishop, were former or current employees. In the original complaint, none of the named plaintiffs were described as permanently disabled or retired from the workforce: Yow was "unable to work for approximately eight months"; Grubbs was disabled "for approxi-

mately nine months"; and as of April 8, 1985 (the date the UAW filed its complaint in state court), Bishop was described as "unable to work since the 27th day of January, 1984." Thus, it appears that the issue of grievance and arbitration procedures applicable to former employees was never squarely addressed in the prior litigation.

would be improper for this court, or the trial court on remand, to reform the contract because the UAW, as a signatory of the collective bargaining agreement, is a necessary party who has not been joined in the present action. We address each of these arguments in turn.

## A. Mutual Mistake and Reformation

■ As a prerequisite to reformation, Appellees must show by clear and convincing evidence that a mutual mistake was made in the collective bargaining agreement. *Royal Aviation, Inc. v. Aetna Casualty & Surety Co.*, 770 F.2d 1298, 1302 (5th Cir.1985); *Aetna Insurance Co. v. Paddock*, 301 F.2d 807, 811 (5th Cir.1962). In a motion for summary judgment, the trial court must evaluate the non-moving party's evidence, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Caton v. Leach Corp.*, 896 F.2d 939, 941 (5th Cir.1990); *see also Powers v. Nassau Development Corp.*, 753 F.2d 457, 462 (5th Cir.) (court must evaluate entire record and indulge every reasonable inference in favor of party opposing the motion), *clarified*, 756 F.2d 1084 (5th Cir. 1985). The trial court must determine "whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented." *Liberty Lobby, supra*, 477 U.S. at 252, 106 S.Ct. at 2512. This evaluation must be made in light of the respective burdens of proof imposed on the parties. *Id.* In reviewing district court's grant or denial of summary judgment, an appellate court is bound to apply these same standards. *Netto v. Amtrak*, 863 F.2d 1210, 1212 (5th Cir.1989).

Appellees contend that the provision for occupational disability benefits set out in Exhibit "C" of the collective bargaining agreement was erroneously included as the result of a clerical error, and that neither the UAW nor GBC intended these benefits to be part of the agreement. A brief summary of the factual premises of Appellees' claim is necessary to understand the discussion that follows.

Appellee GBC submitted with its summary judgment motion the affidavit of Robert Schmitt, GBC's chief negotiator for the collective bargaining agreement. Schmitt's affidavit states that the Exhibit "C" provision for occupational disability payments, under which Meza claims, was originally presented as a proposed alternative to the workman's compensation supplement provided for in Article XVI of the agreement.[13] In addition, Schmitt states that the proposal was limited to a maximum benefit period of eight weeks.[14]

According to Schmitt's affidavit, the Union rejected the proposed alternative and insisted on retention of the Article XVI benefits. When the Union rejected the proposal, Schmitt stated that he wrote the word "eliminate" next to the Exhibit "C" provision for occupational disability benefits.[15] Schmitt then submitted his notes to GBC's personnel manager for preparation of the final collective bargaining agreement. The final agreement included the Exhibit "C" schedule for occupational disability benefits, but not the eight-week limi-

---

**13.** The Article XVI workman's compensation supplement provided that an employee authorized to be absent for reasons covered by Workman's Compensation would receive the difference between his basic wage and whatever amount was provided by Workman's Compensation. The supplement was limited to absences not exceeding eight weeks. Schmitt's affidavit explains that reducing the high cost of Article XVI benefits became an important object of GBC's negotiation strategy, and that the Exhibit "C" proposal was offered as an alternative. In contrast to the Article XVI benefit, the relevant provision of Exhibit "C" calls for the payment of occupational disability benefits not to exceed a fixed amount per week, without regard to the employee's basic wage rate or the amount received through Workman's Compensation.

**14.** A copy of Schmitt's negotiation notes was attached to the affidavit. Schmitt's notes show a provision, immediately underneath the payment schedule for occupational disability benefits, to the effect that: "Benefit would be paid in addition to W/C for maximum benefit period of 8 weeks and would replace the current W/C supplement."

**15.** This notation is shown on the copy of Schmitt's negotiation notes attached to his affidavit.

**1276**

tation. Schmitt conjectures that the personnel manager erroneously interpreted his "eliminate" notation as referring only to the eight-week limitation, instead of to the entire occupational disability benefit provision.[16]

■ The final collective bargaining agreement executed by the parties states in Exhibit "C":

> Part of the collective bargaining agreement and subject to the terms thereof (it being expressly understood, however, that the grievance and arbitration procedures have no application hereto), it is further agreed that ...:
>
> . . . .
>
> (d) The employees' group disability income benefit plan shall provide the following maximum weekly benefits:

| | 7/27/81 | 3/1/82 | 3/1/83 |
|---|---|---|---|
| . . . . | | | |
| B. Occupational Disability (maximum) | $100 | $110 | $120 |

The collective bargaining agreement also provides that:

> The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.

The agreement further provides:

> This agreement represents the complete understanding of the parties and may be added to or amended only after mutual agreement by instrument in writing duly executed by the parties hereto.

Despite the inclusion of these "integration" clauses in the collective bargaining agreement, and despite the apparently clear and unambiguous language of Exhibit "C," Appellees argue that the occupational disability benefits set out in Exhibit "C" were not part of the contract. Appellees claim that Schmitt's affidavit is admissible as parol evidence to show that the benefits were included as the result of a mutual mistake. Appellees are correct. *Horner v. Bourland*, 724 F.2d 1142 (5th Cir.1984). Appellees further contend that Schmitt's version of the contractual negotiations is undisputed, and that they are therefore entitled to have this court reform the contract and grant summary judgment. On this point we disagree.

■ The material fact at issue here is Appellees' contractual obligation to pay Meza the occupational disability benefits provided for in Exhibit "C" of the collective bargaining agreement. At the time of Appellees' motion for summary judgment, the "evidence presented" on this issue included the collective bargaining agreement itself, with the above-quoted provisions. In addition, the district court had in evidence some record of the UAW's original suit against Appellees in which the Union sought the Exhibit "C" occupational disability benefits on behalf of three named plaintiffs. Finally, the court was presented with the affidavit of Robert Schmitt.

We do not question the probative value of Schmitt's affidavit on the question of mutual mistake. However, we reject Appellees' attempt to raise the status of Schmitt's evidence from probative to dispositive. The fact that Meza did not counter Schmitt's affidavit does not detract from the probative weight of the contractual language itself, which Meza submitted to the trial court with his own motion for summary judgment. At best, Schmitt's affidavit raises a question whether Exhibit "C" is a valid term of the collective bargaining agreement. The affidavit only raises the question; it does not answer it. Furthermore, Appellees are wrong in asserting that the issue of mutual mistake is undisputed. If, as Appellees claim, the UAW never intended these benefits to be part of the agreement, the UAW's prior suit for the same benefits is largely inexplicable.

---

**16.** In Schmitt's negotiation notes, the word "eliminate" is immediately juxtaposed to the paragraph containing the time limitation. It cannot be ascertained from the notes whether "eliminate" referred to the payment schedule as well.

Drawing all justifiable inferences from this evidence in Meza's favor, as we must, we conclude that a reasonable jury could have returned a verdict for Meza. This is especially so in light of the heavy burden Appellees must overcome to prove mutual mistake. We do not speculate whether, on remand, Appellees will be able to adduce additional evidence in support of their mutual mistake claim, or ultimately prove with clear and convincing evidence that a mutual mistake was made; as the Supreme Court stated, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby, supra,* 477 U.S. at 249, 106 S.Ct. at 2511. Rather, we conclude that at this juncture, Appellees have not provided us with sufficient evidence to justify granting summary judgment on the alternative ground of mutual mistake.

## B. Res Judicata Redux: Are Appellees Barred From Claiming Mutual Mistake on Remand?

In an attempt to avoid Appellees' mutual mistake argument completely, Meza argues that Appellees are barred from raising this issue, either on appeal or on remand, because they failed to raise it in the prior lawsuit between Appellees and the UAW. This argument is without merit.

Meza cites the Supreme Court's decision in *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927) in support of his claim. In *Phillips,* the Court stated:

The effect of a judgment or decree as res judicata depends on whether the second action or suit is upon the same or a different cause of action. If upon the same cause of action, the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties or those in privity with them, not only in respect to every matter which was actually offered to sustain the demand, *but also as to every ground of recovery which might have been presented.*

*Phillips, supra,* 274 U.S. at 319, 47 S.Ct. at 602 (emphasis added); *see also D–1 Enterprises, Inc. v. Commercial State Bank,* 864 F.2d 36, 38 (5th Cir.1989) ("Essential to the application of the doctrine of res judicata is the principle that the previously unlitigated claim to be precluded could and should have been brought in the earlier litigation."); *Aerojet–General, supra,* 511 F.2d at 715 ("Looking beyond the pleadings to what could have been pleaded, however, is precisely what is required by the federal law of res judicata."). Meza reasons that because Appellees could have pleaded mutual mistake and made their demand for reformation in the prior suit, they are precluded from raising these issues in the present suit. This argument completely ignores the requirement for identity of the parties as a prerequisite of res judicata. *Phillips, supra; Nilsen, supra,* 701 F.2d at 559.

We have already decided that Meza was neither a party or privy in the prior action, and therefore not bound by the judgment. Nevertheless, Meza attempts to benefit from claim preclusion because Appellees were parties to the prior lawsuit and had an opportunity to raise the claim of mutual mistake there. In other words, Meza urges us to apply non-mutual claim preclusion against Appellees. However, as this court recently stated, "our circuit has not foresworn its reliance on mutuality or identity of parties as the standard criterion for claim preclusion, abetted by the concepts of privity and virtual representation." *Lubrizol Corp. v. Exxon Corp.,* 871 F.2d 1279, 1288 n. 14 (5th Cir.1989) (citing *Benson and Ford, Inc., supra,* 833 F.2d 1172); *see also Sidag Aktiengesellschaft v. Smoked Food Prods.,* 776 F.2d 1270 (5th Cir.1985) (non-parties could not benefit from prior judgment where there was no formal relationship and no concert of activities). Nor will we foreswear our reliance on the principles of mutuality and identity of parties in this case. On remand, Appellees are free to raise the issue of mutual mistake as a defense to Meza's contractual claims.

## C. Defect in the Parties

Meza argues that even if Appellees are not precluded from claiming mutual mistake and requesting reformation of the agreement, reformation should not be granted because the proper parties are not before the court. As we have already pointed out, the trial court never addressed the question of mutual mistake in the collective bargaining agreement. Since it never reached this issue, the trial court had no opportunity to decide whether reformation was required. We believe that the district court should have an opportunity to address these matters in the first instance, and we have indicated that Appellees are free to raise the issue of mutual mistake on remand. The propriety of reformation must await the district court's determination of the mutual mistake claim. Because it is not certain whether reformation is or will become an issue that must be decided, any discussion of the proper parties to such reformation would be pure speculation. This court will not indulge in speculation, and we need not determine at this juncture whether the UAW should be joined in the subsequent proceedings.

## III. Pension Benefits

 In addition to occupational disability benefits, Meza claims certain pension benefits referenced in the collective bargaining agreement and set out in a separate pension plan agreement. The district court granted summary judgment in Appellees' favor and dismissed Meza's claim without prejudice because Meza had not exhausted mandatory administrative procedures. On appeal, Meza argues that he was never provided with a summary of the pension plan as required by the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1021, 1022 & 1024.[17] Meza contends that because he was not provided with a pension plan summary, he had no notice of the applicable administrative procedures and should not be bound by them.[18] Appellees do not dispute Meza's claim that he never received a copy of the pension plan or of the plan summary as required by ERISA. On appeal, we must determine whether the district court erred in deciding that Meza was nevertheless required to exhaust his administrative remedies.

When Congress enacted ERISA, one of its primary concerns was "the effectiveness of communication of [pension] plan contents to employees."[19] Explicit disclosure provisions were provided so that individual employees "know[ ] exactly where [they] stand[ ] with respect to the plan—what benefits [they] may be entitled to, what circumstances may preclude [them] from obtaining benefits, what procedures [they] must follow to obtain benefits, and who are the persons to whom the management and investment of [their] plan funds

---

**17.** Section 1022 of ERISA provides, in pertinent part:

(a)(1) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries.... The summary plan description shall include the information described in section (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan....
(b) The plan description shall contain the following information: ... the plan's requirements respecting eligibility for participation and benefits; ... [and] the procedures to be followed for presenting claims for benefits under the plan.

**18.** Meza also claims that the pension plan, which has been made part of the record on

appeal, is not written in the plain, simple terms required by ERISA. In support of this claim, Meza points out that the collective bargaining agreement specifically excludes pension plan matters from grievance and arbitration proceedings. Meza also notes that the collective bargaining agreement contains no reference to any administrative procedures or to a separate plan booklet. We observe, however, that these arguments are directed more to the language of the collective bargaining agreement than to the language of the plan itself. ERISA's plain language requirement does not extend to collective bargaining agreements, but only to the type of benefit plans contemplated by the statute. Because Meza has raised no real issue concerning the language of the pension plan itself, no further discussion of this claim is warranted.

**19.** H.R.Rep. No. 533, 93rd Cong., 2d Sess. 11, *reprinted in* 1974 U.S.Code Cong. & Admin. News 4639, 4646.

have been entrusted." [20] ERISA's disclosure provisions clearly indicate Congress's concern that individual employees be informed of the administrative procedures involved in obtaining pension benefits. It does not follow, however, that Congress intended to excuse individual claimants from exhausting their administrative remedies in those cases where they were never informed of the applicable administrative procedures. [21]

As this court observed in *Denton v. First Nat'l Bank of Waco, Texas,* 765 F.2d 1295, 1300 (5th Cir.1985), "Congress intended to grant authority to the courts to apply the exhaustion doctrine in suits arising under [ERISA]." *Id.* (quoting *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980)). The policies underlying the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo.*" *Denton, supra,* 765 F.2d at 1300. We believe that these policies require claimants to make some attempt at obtaining their benefits through the administrative route, or, at the very least, to make some effort to learn of the procedures applicable to them.

In the case at bar, there is no mention in the record that Meza ever requested plan information from Appellees. Similarly, there is no indication that Meza ever applied for his pension benefits prior to bringing suit. In these circumstances, allowing Meza to make his initial claim for pension benefits by filing a lawsuit would under-mine the policies underlying the exhaustion requirement.

This is not to say, of course, that Meza would have no judicial remedy if Appellees' failure to provide him with pension plan information prejudiced him in his efforts to obtain benefits to which he is otherwise entitled. *See, e.g., Curry v. Contract Fabricators Incorporated Profit Sharing Plan,* 891 F.2d 842, 846 (11th Cir.1990) (plan administrator's refusal to provide plan documents denied claimant meaningful access to administrative remedies and excused claimant from exhaustion requirement). Meza has not claimed that any failure on the part of Appellees to provide him with plan information has prejudiced his ability to obtain plan benefits.

In its orders granting Appellees' motions for summary judgment on Meza's pension benefit claim, the district court noted that "Plaintiff may, of course, pursue his administrative remedies," and further, that "[i]f Provident denies pension benefits on the ground that Meza's failure to exhaust ... or filing of suit has precluded his right to such benefits, Meza is entitled to argue that the decision was arbitrary and capricious because Provident failed to provide him with copies of the plans in the first instance." (citing *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1353 (9th Cir.1984) (in light of failure to comply with reporting, disclosure, and fiduciary obligations of ERISA, decision to deny benefits must be held arbitrary and capricious), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Simmons v. Diamond Shamrock Corp.,* 844 F.2d 517, 524 (8th Cir.1988) (failure to comply with reporting and disclosure requirements not arbitrary and capricious where such failure resulted in no substantial harm). [22] The district court's reasoned

---

**20.** *Id., reprinted in* 1974 U.S.Code Cong. & Admin.News at 4649. *See also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989).

**21.** ERISA permits private enforcement of its disclosure provisions, and provides that a plan administrator who fails or refuses to comply with an employee's request for plan information can be held personally liable to the employee for up to $100 for each day after the date of the refusal. 29 U.S.C. § 1132(b) and (c). These statutory remedies are directed more at ensuring the availability of plan information than at suspending the force of the plan's administrative requirements.

**22.** We note in passing that arbitrary and capricious is no longer the applicable standard of review for a plan administrator's denial of ERISA benefits. *See Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 56 n. 1 (5th Cir.1990) (arbitrary and capricious standard used in *Denton v. First Nat'l Bank* no longer proper in light

approach protects Meza from any prejudice arising from Appellees' failure to provide him with pension plan information, while maintaining the proper regard for the policies underlying the exhaustion requirement. We fully endorse the district court's decision on this issue.

## CONCLUSION

We AFFIRM the district court's dismissal without prejudice of Meza's pension benefit claim. Even though Meza did not receive a copy of a Plan Summary as required by the Employee Retirement Income Security Act, he has not shown that the lack of information has harmed him or precluded him from pursuing his administrative remedies at this point. We REVERSE the district court on the single issue of the res judicata effect of the Union's prior suit on Meza's claim in this suit for occupational disability benefits. Meza was not a party in the prior suit. Moreover, as a former Union member, Meza is not in privity with the Union and is not automatically bound by the Union's action even though the Union intended to represent him. Absent some express or implied authority from Meza to act on his behalf, the Union is not an adequate representative of Meza's individual interests in this case. Having held that there was insufficient identity between the parties in the two suits for res judicata to apply, we also concluded that all relevant issues surrounding Meza's claim for occupational disability benefits, including the possibility of mutual mistake, are appropriate for further exploration on remand. We REMAND the case for further consideration of these issues consistent with this opinion.

of *Firestone v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); *Batchelor v. International Brotherhood of Elec. Workers Local 861 Pension & Retirement Fund,* 877 F.2d 441, 442 (5th Cir.1989) (denial of benefits challenged under ERISA reviewed under a de novo standard but if administrator has discretionary authority, the reviewing court should apply an abuse of discretion standard) (construing *Firestone v. Bruch, supra,* 109 S.Ct. at 956).