UNITED STATES of America, Plaintiff,

v.

CITY AND COUNTY OF SAN FRANCISCO, Defendant–Appellee.

SAN FRANCISCO FIRE FIGHTERS, LOCAL 798, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL–CIO, Defendant–Appellant,

v.

Fontaine DAVIS, Plaintiff–Intervenor.

No. 91–16871.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1992.

Decided Nov. 6, 1992.

Duane W. Reno, Davis, Reno & Courtney, San Francisco, Cal., for defendant-appellant.

William C. McNeill, III, George A. Riley, Deputy City Atty., San Francisco, Cal., for defendant-appellee.

Before: WALLACE, Chief Judge, POOLE, Circuit Judge, and MARSH,* District Judge.

* Honorable Malcolm F. Marsh, United States District Judge, District of Oregon, sitting by designation.

WALLACE, Chief Judge:

San Francisco Fire Fighters, Local 798 (Union) appeals from a November 1991 district court order approving the promotion of 12 candidates to the position of captain in the San Francisco Fire Department (Department). The district court had jurisdiction pursuant to 42 U.S.C. §§ 1981, 1983. The Union asserts that we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). Plaintiff Davis and the City and County of San Francisco (City) argue that this court lacks jurisdiction and that the Union lacks standing to bring this appeal. Because we dismiss this appeal for lack of Article III standing, we do not reach the question of our jurisdiction or the issues raised by the Union on the merits.

## I

The history of this litigation is set forth in the opinions of the district court and this court on a previous appeal. *See United States v. City and County of San Francisco*, 696 F.Supp. 1287, 1289–98 (N.D.Cal. 1988), *aff'd*, *Davis v. City and County of San Francisco*, 890 F.2d 1438, 1442–44 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 248, 112 L.Ed.2d 206 (1990). In November 1991, the City filed a motion in the district court requesting, in part, a declaration that it could promote 12 candidates to the position of captain pursuant to a procedure known as banding. Banding utilizes an affirmative action component in making promotion decisions between candidates with test scores that fall within a statistically derived band or range. *See Officers for Justice v. Civil Serv. Comm'n*, 979 F.2d 721 (9th Cir.1992). Candidates with scores within the band are considered equally qualified with respect to the skills and abilities measured by the examination. Promotions are then made from among the candidates with scores inside the band on the basis of secondary criteria, including race.

The City requested the declaration from the district court prior to making the 12 promotions because (1) the Monitor's Tentative Seventeenth Report ordered the City to promote only minority candidates to the position of captain, whereas only 7 of the 12 individuals that the City proposed to promote were minorities; (2) a hearing on the Monitor's report had been continued on four occasions; (3) plaintiffs in the case threatened to bring a motion for contempt if the City did not promote only minority candidates in accord with the Monitor's recommendation; (4) the next captain's examination was three weeks away and candidates near the top of the list needed to know whether they should prepare for the examination; and (5) many individuals recommended for promotion were holding temporary appointments in critical positions, an arrangement deemed "untenable" by the Department.

The district court granted a motion to intervene brought by the 15 highest scoring nonminority candidates. They were represented by counsel at the hearing on declaratory relief and orally joined in the City's motion.

The question before the district court at the November 1991 hearing was not whether the appointment of seven minority candidates pursuant to banding violated equal protection, Title VII, or the consent decree, as argued by the Union on this appeal. Rather, the issue raised by the City was whether the appointment of some nonminority candidates would place the City in jeopardy of being held in contempt for not complying with the Monitor's recommendations. The district court granted the City's motion and approved its promotion plan. The City then promoted 12 candidates to the position of captain pursuant to the banding procedure.

## II

Plaintiff Davis and the City challenge the Union's standing to bring this appeal. They argue that none of the members that the Union represents in this action have suffered an "injury in fact" as required for Article III standing. The Supreme Court has established that the irreducible consti-

tutional minimum of standing contains three elements:

> Art[icle] III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), *quoting Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979) and *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976).

The Union asserts standing as an organization representing the interests of its fire fighter members. An association has standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). The Union fails to meet the first element of this test because it has not shown that one of the members it represents in this action has suffered injury in fact that is likely to be redressed by a favorable decision.

■ Because the Union invokes federal jurisdiction in this appeal, it bears the burden of establishing standing. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990); *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975) (*Warth*). In its brief, the Union argued that it represents all of its current members, whether or not they are represented by separate counsel in this action. The Union abandoned this position at oral argument and conceded that it does not represent the 15 fire fighters who intervened and retained separate counsel. We agree with the City and hold that the Union may not derive standing from those members who have chosen separate representation. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985); *see also Meza v. General Battery Corp.*, 908 F.2d 1262, 1271 (5th Cir.1990). The likelihood that the interests of the 15 nonminority fire fighters diverge from those of the other members of the Union counsels against treating the Union as representing their interests for the purpose of establishing standing to sue.

■ The Union next argues that it has standing if the position of the members it represents would be improved in the event the court granted the requested remedy. *See United States v. Imperial Irrigation Dist.*, 559 F.2d 509, 519 (9th Cir.1977), *modified*, 595 F.2d 525 (9th Cir.1979), *aff'd in relevant part, Bryant v. Yellen*, 447 U.S. 352, 100 S.Ct. 2232, 65 L.Ed.2d 184 (1980). The Union, however, has not requested removal and replacement of the 15 individuals promoted by the City after the district court's order. Therefore, no change in the promotion status of any fire fighter would be altered by the relief sought in this appeal. Even if we reversed the district court's order, their positions would remain unaltered with respect to their chances of promotion.

In addition, if we were to reverse the order and direct the district court to award damages to the fire fighters who would have received rank order promotions, none of them would be the fire fighters who are represented by the Union in this appeal. As stated above, the 15 top scoring nonminority fire fighters are separately represented in this action. Therefore, on the basis of the requested relief, the Union can show no injury to a member that it represents here.

■ The Union also argues that it has standing because the City might, if the district court's order is reversed, promote nonminority candidates out of rank order from within the band. The Union represents those nonminority fire fighters whose

scores were within the band under consideration, and who might have been promoted out of rank order, ahead of other nonminority fire fighters. If those fire fighters could thereby show an injury in fact, the Union might have standing.

However, even if the Union were to prevail in its attack on the City's use of banding, there is no evidence that the City would continue to use banding as a means of making promotion selections. Prior to this lawsuit, promotions were invariably made in strict rank order. The City has not conceded, nor has the Union alleged, that the City would make promotions out of rank order in the absence of the affirmative actions goals served by banding. Therefore, the possibility that a Union member would have been promoted out of rank order pursuant to a banding procedure that did not include an affirmative action component is highly speculative. Such speculation is insufficient to confer standing. *See Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990); *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–05, 103 S.Ct. 1660, 1664–1666, 75 L.Ed.2d 675 (1983); *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206.

The Union also argues that it has standing in its own right as the representative of its members with respect to changes in the promotional practices of the City, citing California statutory law. *See* Cal. Gov't Code §§ 3500–3510 (West 1980). However, the district court's November 1991 order effectuated no change in the promotion practices of the City. The order merely declared that the City could promote the candidates without fear that the promotion of some nonminority candidates was in violation of the consent decree as interpreted by the Monitor's Seventeenth Report. The Union incorrectly relies on *EEOC v. American Tel. & Tel. Co.,* 556 F.2d 167 (3d Cir.1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3145, 57 L.Ed.2d 1161 (1978). In that case, the Third Circuit held that a union had organizational standing to challenge claimed inconsistencies between an affirmative action consent decree and existing collective bargaining contracts. *Id.* at 173. The Union alleges no such inconsistencies

in this case. Instead, it alleges interference with its statutory right under a California law that requires a public employer to "meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of ... recognized employee organizations." Cal. Gov't Code § 3505 (West 1980). There is no federal jurisdiction over this claim, and thus it cannot confer Article III standing on the Union to appeal the federal claims raised here.

APPEAL DISMISSED.