679 So.2d 563 (1996)
Tommy H. CONDREY, Plaintiff-Appellant,
v.
Richard K. HOWARD, J., Leo A. Miller, Jr., Howard Gin, Inc., Louisiana Fiber Corporation & Dixie River Cotton Products, Inc., Defendants-Appellees.
No. 28442-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1996.
Writ Denied November 22, 1996.
*564 Ward, Nelson & Pelleteri by Joseph R. Ward, Jr., New Orleans, for Appellant, Tommy H. Condrey.
Snellings, Breard, Sartor, Inabnett & Trascher by Charles C. Trascher, III, Monroe, for Appellees, Richard K. Howard and Louisiana Fiber Corp.
Cotton, Bolton, Hoychick & Doughty by David P. Doughty, Rayville, for Appellee, Howard Gin, Inc.
Before MARVIN, BROWN and STEWART, JJ.
*565 BROWN, Judge.
Because of a prior federal court judgment for defendants, this state court action for breach of contract, negligence and intentional tort was dismissed. Plaintiff, Tommy Condrey, appeals the dismissal of the shareholder derivative suit he brought on behalf of Dixie River Cotton Products, Inc. We affirm.

FACTS
Dixie River Cotton Products Inc. ("Dixie") bought, stored, sold and brokered cottonseed. Dixie was formed and owned equally by Tommy Condrey and Richard Howard. Condrey was elected as president of the company and acted as Dixie's cottonseed broker. Howard was the secretary-treasurer and acted as the corporation's warehouser and shipper. Howard and Condrey served as the corporation's directors along with Leo Miller, who also acted as Dixie's attorney.
Losses related to an adverse judgment, alleged mismanagement, and alleged theft of corporate assets led Condrey to file suit in U.S. District Court for the Western District of Louisiana against Howard and Miller in May 1989. In addition to Howard and Miller, defendants included Howard Gin, Inc. and Louisiana Fiber Corporation. Federal jurisdiction was premised on alleged violations of the Racketeering Influenced Corrupt Organizations Act ("RICO").
In addition to his federal claim, Condrey invoked the federal court's pendent jurisdiction and asserted related state law claims. Specifically, Condrey claimed that Howard's shipping practices and the failure to properly title various Dixie assets constituted theft and/or tortious conversion under Louisiana law. Condrey also alleged the existence of a contract between himself and Howard and his closely held companies for the brokerage and delivery of cottonseed which Howard breached. Finally, Condrey argued that Howard's mismanagement and manipulation of Dixie's assets amounted to negligence and/or an intentional tort.
In July 1989, Condrey filed suit in state court in East Carroll Parish against Howard, Miller, Howard Gin, Inc., and Louisiana Fiber Corporation. Dixie was named as a nominal defendant for purposes of a shareholder derivative claim. Therein, Condrey alleged breach of contract, negligence and intentional tort based on the same transactions and wrongs as alleged in Condrey's federal court suit. Condrey also instituted a shareholder's derivative claim on behalf of Dixie reiterating the aforementioned claims against defendants and further alleging a breach of fiduciary duties by Howard and Miller. Miller and three other incidental defendants were later dismissed leaving only Howard, his related companies, and Dixie as defendants.
In June 1990, Condrey voluntarily dismissed his pendent state law claims without prejudice in federal court under F.R.C.P. 41(a)(1)(I), thereby leaving only the RICO action before that court. A jury returned a judgment in favor of Condrey and awarded damages of $300,000 in the first RICO trial; however, the verdict was overturned on grounds of inconsistency and a new trial was ordered. A second jury again found in favor of Condrey and this time awarded damages of $900,000. The district court judge, however, overturned the second verdict and entered a judgment as a matter of law in favor of all defendants. Condrey appealed to the U.S. Fifth Circuit Court of Appeal which affirmed, without opinion, the decision below noting that the proven, isolated incidents of misconduct did not rise to the level of a pattern of racketeering activity.
Following the final judgment rendered in federal court, Richard Howard, Louisiana Fiber Corp., and Howard Gin, Inc. filed exceptions of res judicata in the state court proceedings. A hearing was held on the motion and the judge concluded that Condrey was the virtual representative of Dixie. The parties in the federal and state actions were thus considered identical. The judge concluded that the damages sought and the wrongful acts alleged in the federal and state suits were the same. Applying the case of Reeder v. Succession of Palmer, 623 So.2d 1268 (La.1993), the judge concluded that Condrey's state court action was barred under applicable federal principles of res judicata.
*566 On appeal, plaintiff abandons the personal claims he asserted in state court and assigns error in the trial court's conclusion that he was the virtual representative of or in privity with Dixie.

DISCUSSION
Plaintiff agrees that the principles of res judicata are implicated but argues that his shareholder derivative action comes within an exception to that doctrine. Condrey's RICO claim was based on allegations that defendants committed mail fraud, wire fraud, and theft from interstate commerce. According to Condrey, Howard successfully negotiated a lucrative warehouse lease to be granted by a local port authority in favor of Dixie; however, Howard had the lease drawn in favor of Louisiana Fiber Corp. d/b/a Dixie River Cottonseed Products.[1] Letters which fraudulently misrepresented the name of the lessee were allegedly sent by Howard through the U.S. mail.
Condrey also alleged that certain pieces of heavy machinery purchased by Dixie were titled by Howard, without Condrey's knowledge or permission, in the name of H & W Warehouse, another of Howard's closely held companies. The mortgage documents, reflecting the wrong corporation as owner of the equipment, traveled in the U.S. mail to a bank in Texas, thus creating a basis for alleged mail fraud.
Condrey also asserted that Howard had engaged in a practice of overstating the weight of cottonseed, thereby resulting in "shortweighed" shipments. Agway Inc., one of Dixie's customers, received such a shortweighed shipment and wired its payment to Dixie. Condrey alleged this incident as an example of wire fraud. Moreover, Condrey alleged a scheme by Howard and Louisiana Fiber Corporation to regularly engage in such shortweighing. The alleged shortweighing was characterized by Condrey as theft from interstate shipments.
Finally, Condrey claimed that Dixie purchased a Hycoloader buildinga large building used to store cotton seedfrom Howard Gin, Inc.[2] Richard Howard, however, allegedly titled the building in the names of himself and his wife.
The Reeder case succinctly sets forth the general federal principles to be followed when a state court is required to determine the preclusive effect of a judgment rendered by a federal court exercising federal question jurisdiction. These principles are clearly relevant to the instant case and a brief summary of the law as expounded in Reeder is warranted.
Under federal precepts res judicata treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. The effect of the judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial. Claim preclusion, or "true res judicata," bars subsequent action where parties or their privies have previously litigated the same claim to a valid final judgment. Reeder, supra. Four prerequisites for the application of res judicata are: (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases. Reeder, supra; Meza v. General Battery Corporation, 908 F.2d 1262 (5th Cir.1990).
On appeal, plaintiff asserts error in the trial court's findings regarding the common identity of the parties to the federal and state proceedings. Condrey argues that he was the true party in interest in the RICO litigation in Federal Court and that Dixie, a separate juridical entity, is the interested party in the subject state action. Plaintiff recognizes that in strictly construed circumstances, the preclusive effects of judgments can bind persons who are in "privity" with *567 parties to the prior litigation. Privity exists in only three narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit. Meza, 908 F.2d at 1266.
The trial judge apparently concluded that Dixie was not a successor in interest to any property interest held by Condrey. Neither did the trial judge conclude that Dixie controlled the RICO litigation waged by Condrey. Instead, the trial judge concluded that Dixie's interests were adequately represented by Condrey during the prior litigation and that Condrey was Dixie's "virtual representative," thereby creating a common identity for Condrey and Dixie.
Federal courts have treated "adequate representation" as synonymous with virtual representation. Meza, 908 F.2d at 1267. The concept of virtual representation is, however, strictly confined and requires that there be an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues. Benson and Ford, Inc. v. Wanda Petroleum Co., 833 F.2d 1172 (5th Cir.1982). Condrey argues that he was not accountable to Dixie under any express or implied legal relationship for the lawsuit raised in federal court and therefore cannot be considered Dixie's virtual representative.
There are, however, other considerations in determining privity or virtual representation where the parties involved are a closely held corporation and a major stockholder. We find § 59 of the Restatement (Second) of Judgments (1982) relevant:
Except as stated in this Section, a judgment in an action to which a corporation is a party has no preclusive effects on a person who is an officer, director, stockholder, or member of a non-stock corporation, nor does a judgment in an action involving a party who is an officer, director, stockholder, or member of a non-stock corporation have preclusive effects on the corporation.
* * * * * *
(3) If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by or against the corporation or the holder of ownership in it is conclusive upon the other of them as to the issues determined therein as follows:
* * * * * *
(b) The judgment in an action by or against the holder of ownership in the corporation is conclusive upon the corporation except when relitigation of the issue is justified in order to protect the interest of another owner or a creditor of the corporation.[3]
The rationale for this rule is explained in comment (e) to § 59:
When the corporation is closely held, however, interests of the corporation's management and stockholders and the corporation itself fully coincide. By definition, the stockholders are few in number and either themselves constitute the management or have direct personal control over it.... For the purpose of affording opportunity for a day in court on issues contested in litigation, however, there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that their interests coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect them both.
A practical application of this rule and a recognition of the common alignment of interests between shareholders and their closely held corporations is found in Robinson v. National Cash Register Co., 808 F.2d 1119 (5th Cir.1987). There, plaintiffs, as individuals, initially brought a diversity action *568 against defendant in federal court. A verdict was entered in favor of defendant which was not appealed. Later, plaintiffs instituted suit in state court based on the same cause of action. In addition to plaintiffs as individuals, they were joined in the suit against defendant by their closely held corporation. Defendants successfully removed the action to federal district court where it was subsequently dismissed on res judicata grounds. Although the corporation was not a named party in the prior litigation, the district court concluded that plaintiffs, as individuals, had been the virtual representatives of the corporation. In reaching its decision, the district court found that one of the two individual plaintiffs was the majority and controlling shareholder and president of the corporation while the second individual plaintiff was an original incorporator, a director and an officer. Under such circumstances, the corporation was held to be the alter ego of the individual plaintiffs. The district court's conclusions were affirmed.
Following these precepts, we cannot conclude that the trial court erred in finding that Condrey was the virtual representative of Dixie. In previous litigation against Dixie involving the alleged shortweighing deception, a trial judge concluded that Dixie was the alter ego of its owners noting that both Condrey and Howard used the corporation as if it were "just one pocket of their pants." Condrey was one of Dixie's three directors, acted as its president and owned fifty percent of its shares. Although not clear when, Howard's stock was apparently divided amongst his children, technically making Condrey the largest shareholder. Only Condrey has expressed an interest in championing whatever claims Dixie may have against Howard and his companies. The other shareholders have expressly disclaimed any interest in the derivative action. Moreover, Dixie seemingly has no outstanding creditors. Under such circumstances, we find no error in the trial court's refusal to recognize a distinction between Dixie and Condrey.
The validity of the final judgment rendered by the federal court has not been challenged by the parties. We find no apparent jurisdictional errors and a final judgment on the issue of plaintiff's RICO claims has been rendered. A court of competent jurisdiction has thus rendered a final judgment on the merits.
The last prerequisite to the operation of res judicata is a commonality of claims. The commonality of claims was the primary issue before the court in Reeder. The specific issue raised in that case essentially required a determination of whether contract, tort, and unfair trade practices claims based on state law and raised in a state court action were barred by a prior, valid federal court judgment between the same parties which decided plaintiff's claims of state and federal securities law violations. At the heart of this inquiry is the issue of whether the various theories of recovery asserted constituted or arose from the same claim.
In the absence of uniform definitions for the terms "claim" or "cause of action," the Reeder court noted that most federal courts have adopted the transactional analysis as to what constitutes a "claim" set forth in §§ 24 and 25 of the Restatement (Second) of Judgments (1982). Reeder, 623 So.2d at 1271. Based on the Restatement, the rule of Reeder states the following:
Succinctly stated, if a set of facts gives rise to a claim based on both state and federal law, and the plaintiff brings the action in a federal court which had "pendent" jurisdiction to hear the state cause of action, but the plaintiff fails or refuses to assert his state law claim, res judicata prevents him from subsequently asserting the state claim in a state court action, unless the federal court clearly would not have had jurisdiction to entertain the omitted state claim, or, having jurisdiction, clearly would not have declined to exercise it as a matter of discretion.
Reeder, 623 So.2d at 1272. The scope of the term "claim" where a prior judgment was rendered by a federal court, where jurisdiction was based on the existence of a federal question, is thus determined by the facts of the case and whether they would have given rise to an exercise of federal court pendent jurisdiction over related state law claims. Where such pendent jurisdiction exists and *569 would not clearly have been declined as a matter of discretion, the scope of a previously adjudged federal claim includes related state claims. An attempt to raise state law claims which could have been determined in a prior federal court proceeding are thus barred by res judicata.
The power of a federal court to exercise jurisdiction over state law based claims was set forth United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). There, the court stated that pendent jurisdiction to hear state law claims exists whenever there is a claim arising under the federal constitution or laws of the United States and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance to confer subject matter jurisdiction on the court and the state and federal claims must derive from a "common nucleus of operative fact."
Plaintiff's RICO claim was tried on the merits and was unsuccessful due to plaintiff's failure to prove the necessary elements of his case. The matter did not fail due to subject matter jurisdictional shortcomings. Moreover, Plaintiff's federal and state law claims arose under precisely the same set of facts and alleged wrong doing. With a claim based on federal law properly before the court and a common nucleus of operative facts underlying both state and federal claims, we cannot conclude that the federal court lacked jurisdiction to hear plaintiff's state law based claims.
Neither can we conclude, on these facts, that having such jurisdiction, the court would clearly have declined to exercise it as a matter of discretion. Pendent jurisdiction is a doctrine of discretion which allows the trial court a wide latitude of choice in deciding whether to exercise that judicial power. In making its decision, a federal court must weigh factors of judicial economy, convenience, fairness and comity and should consider whether state law issues predominate or whether divergent theories of recovery would lead to confusion. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); United Mine Workers of America v. Gibbs, supra. In light of the federal court's discretion and the necessary indeterminacy of the discretionary standards, in order for a subsequent court to say that a federal district court clearly would have declined its jurisdiction of a claim not filed, the subsequent court must find that the previous case was an exceptional one which clearly required declination. Reeder, 623 So.2d at 1274. The question is not whether the federal court would probably have entertained the action, but rather, whether it is clear that it would have declined to exercised pendent jurisdiction. We find nothing exceptional about the composition of plaintiff's case that would have warranted a refusal to exercise pendent jurisdiction.

CONCLUSION
The trial court correctly concluded that Condrey was the virtual representative of Dixie in the prior federal court suit. A valid final judgment on the merits was rendered by the federal district court. Moreover, it is not clear that the federal district court would have decline to exercise its pendent jurisdiction over plaintiff's state law based theories of recovery. Accordingly, the trial court did not err in applying the rule of Reeder to hold plaintiff's state law based claims barred under principles of res judicata. Costs are assigned to defendants.
AFFIRMED.
NOTES
[1] Louisiana Fiber Corporation is a closely held corporation owned by Richard Howard. Dixie River Cottonseed Products (not to be confused with Dixie River Cotton Products or Dixie) was a nonexistent business.
[2] Howard Gin is owned by Richard Howard's father. Richard Howard managed the company and served as its vice president.
[3] As explained in Reeder, "[f]ederal res judicata principles have been heavily influenced by the great advances in the Restatement Second of Judgments. Federal courts and commentators cite and rarely depart from the restatement view." Reeder, 623 So.2d at 1271. We likewise consult this secondary authority.