801 So.2d 1255 (2001)
Maxwell C. McDONALD, Jr.
v.
Wilton Robert CASON and C&B Sales and Service, Inc.
No. 01-0932.
Court of Appeal of Louisiana, Third Circuit.
December 12, 2001.
*1257 Robert L. Cabes, Milling, Benson, Woodward, L.L.P., Lafayette, LA, James K. Irvin, Milling, Benson, Woodward, L.L.P., New Orleans, LA, Counsels for Maxwell C. McDonald, Jr.
Steven G. Durio, Durio, McGoffin & Stagg, Lafayette, LA, William E. Logan Jr., The Logan Law Firm, Lafayette, LA, Robert L. Broussard, Durio, McGoffin & Stagg, Lafayette, LA, Gregory J. Logan, The Logan Law Firm, Lafayette, LA, and Randall M. Guidry, Durio, McGoffin & Stagg, Lafayette, LA, Counsels for Wilton Robert Cason, C&B Sales & Service, Inc.
Court composed of HENRY L. YELVERTON, JOHN D. SAUNDERS, and ELIZABETH A. PICKETT, Judges.
SAUNDERS, Judge.
Defendants, C&B Sales and Service, Inc. and Wilton Robert Cason, appeal the trial court's granting of Plaintiffs motion for summary judgment dismissing Defendant's reconventional demand. For the reasons that follow, we affirm.

*1258 Factual and Procedural Background
This matter is before this court on devolutive appeal by C&B Sales & Service, Inc. ("C&B") and Wilton Robert Cason ("Cason") ("Appellants") from a judgment entered by the trial court on February 5, 2001, granting a motion for summary judgment filed by Maxwell C. McDonald, Jr. ("McDonald") (Appellee"). This judgment was designated as a final judgment, pursuant to La.Code Civ.P. art 1915(B) on August 10, 2001.
In order to properly understand the issues before this court, we find it necessary to discuss the factual and procedural background of the federal court action that preceded this state action. In C&B Sales & Serv., Inc. v. McDonald, 95-30550 (5th Cir.9/12/96); 95 F.3d 1308, C&B brought suit against McDonald and others alleging breach of fiduciary duty, fraud and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). C&B is a Louisiana corporation that was formed by Cason in 1964. C&B supplied new and used compressors and pumps for natural gas pipelines. At the time it was formed, Cason was the majority stockholder and there was one single minority stockholder.
Cason hired McDonald, in September of 1980, to manage C&B's compressor rental division. Apparently, due to the success of McDonald, Cason promoted McDonald to company president in 1986. With Cason's consent, McDonald bought out the minority shareholder and became a part owner of C&B. In 1983, McDonald and Robert Humphrey (the owner and president of Compressor Components Corporation ("CCC"), a Texas company) began a joint venture to buy and sell used gas compressors and equipment on speculation. Eventually, CCC began doing business with C&B. As C&B's purchaser, McDonald leased compressors from CCC, with an option to buy. C&B exercised that option several times and CCC paid McDonald one-half of the profits from each of those transactions. McDonald had assured Humphrey that he had disclosed his conflict of interest to Cason when, in fact, he had not.
In 1988, C&B began experiencing a cash flow problem which prevented it from purchasing equipment. Therefore, the equipment that C&B had bought from CCC was retained under lease terms instead. C&B then re-leased the equipment to industry customers. McDonald and Humphrey then formed another company, Compressor Operating, Inc. ("COI"), which they jointly owned and which leased units to CCC. Because they did not want CCC to appear to be in competition with its customers who were in the business of leasing equipment, McDonald and Humphrey formed COI. Again, Humphrey asked McDonald if he had informed Cason or C&B of his involvement with CCC and COI, and again McDonald assured him that he had disclosed his interest to Cason. In fact, McDonald had not disclosed his involvement with either Humphrey or COI to Cason or anyone at C&B.
COI continued to lease compressors to C&B despite C&B's continued cash flow problems. On February 6, 1989, C&B and COI entered into a second rental agreement. Like the first, only McDonald signed on behalf of C&B. Although Cason asked for a copy of the new agreement, McDonald never gave it to him. In 1989, Cason expressed interest in selling the compressor division of C&B. In August of 1990, Cason entered into negotiations with Hanover Energy for the sale of the assets of the compressor division. Just prior to closing the deal with Hanover, C&B's attorney learned that McDonald was an incorporator and director of COI. Although C&B attempted to delay the sale in order to determine the extent of McDonald's involvement *1259 with Humphrey, Hanover insisted that the sale go forward.
In accordance with the terms of the sale to Hanover, C&B's board previously had voted to award Cason and McDonald bonuses proportional to their respective ownership interest in C&B to be paid from the proceeds of the sale. McDonald was to receive $700,000. In light of the possible litigation concerning McDonald's involvement with COI, McDonald and C&B agreed that his $700,000 bonus would be disbursed to McDonald's attorney, as an escrow agent pursuant to the escrow. These funds were to remain in escrow pending resolution of C&B's claims against McDonald. The parties were never able to agree on a settlement of these claims, and C&B filed suit, in federal court, on June 14, 1991. Following a bench trial, the court found McDonald liable for breach of fiduciary duty.
This appeal arises out of a shareholder derivative action filed by McDonald against Cason, on May 14, 1992, in the Fifteenth Judicial District Court of Louisiana for the Parish of Lafayette. In response to McDonald's shareholder derivative suit, Appellants filed an answer and reconventional demand seeking recision of waivers of their first right of refusal to purchase the stock acquired by McDonald and the benefits flowing therefrom. The benefits sought by Appellants mainly consist of the $700,000 bonus voted by C&B's directors to McDonald. The judgment on appeal before this court dismissed with prejudice the reconventional demand by Appellants. In dismissing the action, the trial court found that the reconventional demand was barred by res judicata.
On appeal, the appellants urge the following assignments of error:
1. The trial court erred when it applied the doctrine of res judicata to C&B's reconventional demand in state court.
2. The trial court erred when it amended its summary judgment to designate it as a final judgment by the court without an express determination that there is no just reason for delay as required by La.Code Civ.P. art. 1915(B)(1).
3. The trial court abused its discretion in designating its summary judgment in favor of Plaintiff, McDonald, dismissing Defendant, C&B's reconventional demand without revising its decision prior to rendition of the judgment to adjudicate all of the claims and rights and the liabilities of the parties.
4. The trial court erred in granting summary judgment because the record and evidence presented show that there are genuine issues of material fact.

Law and Analysis

Res Judicata
When a state court is required to determine the preclusive effects of a judgment rendered by a federal court exercising federal question jurisdiction, the state court must apply the federal law of res judicata. Reeder v. Succession of Palmer, 623 So.2d 1268 (La.1993); McCollough v. Dauzat, 98-1293 (La.App. 3 Cir. 3/03/99); 736 So.2d 914.
Under federal precepts, "claim preclusion" or "true res judicata" treats a judgment, once rendered, as a full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on the claim in a separate action. Conversely, when a judgment is rendered for a defendant, *1260 the plaintiff's claim is extinguished; the judgment then acts as a "bar." Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial. (Emphasis added).
Reeder, 623 So.2d at 1271; citing Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., 575 F.2d 530 (5th Cir.1978); Restatement (Second) of Judgments §§ 18-20 (1982).
"[I]f a set of facts gives rise to a claim based on both state and federal law, and the plaintiff brings the action in a federal court which had `pendent' jurisdiction to hear the state cause of action, but the plaintiff fails or refuses to assert the state claim, res judicata prevents him from subsequently asserting the state claim in a state court action...." Reeder, 623 So.2d at 1272-1273. Res judicata compels the plaintiff to bring forward his state theories in the federal action, in order to make it possible to resolve the entire controversy in a single lawsuit. Id. Applying these rules to the case at hand, we conclude that the claims asserted by Appellants are precluded by the res judicata bar of the federal court judgment.
The four prerequisites for the application of res judicata are: (1) the parties must be identical in both suits, or in privity; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases. Condrey v. Howard, 28,442 (La.App. 2 Cir. 8/21/96); 679 So.2d 563; writ denied 96-2335 (La.1996); 683 So.2d 281; citing Reeder, 623 So.2d 1268; Meza v. General Battery Corp., 908 F.2d 1262 (5th Cir.1990). The existence of privity is narrowly defined. Privity may exist where: (1) the non-party is the successor in interest to the party's interest in the property; (2) the non-party controlled the prior litigation; and (3) the non-party's interests were adequately represented by a party to the original suit. Condrey, 679 So.2d 563; Meza, 908 F.2d 1262.
On appeal, neither party has raised issues as to jurisdiction of the federal court or the finality of the judgment rendered by the federal court in August 1999. However, Appellant alleges that Cason and C&B are separate parties and, as such, fail to meet the first requirement of the test enumerated in Condrey. However, the trial court found that Cason was "virtually represented" in the federal matter, in that, he was president and principal owner (5/6) of C&B and actively participated in the prosecution of the case. "Federal courts have treated `adequate representation' as synonymous with virtual representation. Meza, 908 F.2d at 1267. The concept of virtual representation requires that there by an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues. Benson and Ford, Inc. v. Wanda Petroleum Co., 833 F.2d 1172 (5th Cir. 1987)." Condrey, at p. 6, 679 So.2d at 567. Additionally, when a corporation is closely held, the owner's and the corporation's interest coincide. Thus, "one opportunity to litigate issues that concern them in common should sufficiently protect them both." Condrey, 679 So.2d at 567 (quoting Restatement (Second) of Judgments § 59 (1982)).
Although Cason was not a named party in the federal action, we agree with the trial court's finding that he was virtually represented by C&B during the federal court action. Cason was the majority stockholder (5/6) and president of C&B. Furthermore, Cason testified that he actively *1261 participated in the presentation of the case. Accordingly, we find no error in the trial court's finding of virtual representation by C&B.
On appeal, Appellants further allege that its reconventional demand did not arise out of the same transactions or occurrences that were the subject matter of the federal court litigation. We find no merit to this assertion. Both the federal claims and the state reconventional demand involve allegations of fraud, misrepresentation, and breach of fiduciary duty by McDonald involving the rental and sale of compressor units. It is the rental and sale of these compressors that form the root of both the reconventional demand and the federal court claims.
Although the reconventional demand alleges new theories, we find that these theories are merged with and extinguished by the federal judgment. The reconventional demand seeks to rescind the waiver executed for the benefit of McDonald, which allowed him to become a stockholder in C&B. The demand is based on error which arises out of McDonald's alleged fraud, misrepresentation, and breach of fiduciary duty. These allegations are the same allegations that form the basis for the federal suit. Although the stock ownership may never have been an issue in the federal litigation, both Cason and C&B had knowledge of the alleged error with regards to the waiver of first right of refusal and had the opportunity to raise the theory and seek the relief now sought in federal court. We find that the claims made in appellants' reconventional demand arise out of the same transaction or occurrence as the federal claim which has previously been adjudged by the federal court. Accordingly, the theory of recovery and the forms of relief now advanced in the reconventional demand are merged with the federal judgment. Consequently, Appellants are barred by res judicata from relitigating in state court.

Amended Summary Judgment
La.Code Civ.P. art 1915(B) provides:
(1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories,... the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
The original judgment upholding the summary judgment filed by McDonald and dismissing the reconventional demand filed by Cason and C&B was not designated as a final judgment by the trial court. However, such a designation was made by supplemental judgment after the issue was raised sua sponte by this court by order dated July 13, 2001. In accordance with said order, the trial court, after expressly determining that there was no just reason for delay, designated the judgment as a final judgment on August 10, 2001.
Appellants argue that the trial court erred when it amended its summary *1262 judgment to designate it as a final judgment without an express determination that there is no just reason for delay as required by La.Code Civ.P. art. 1915(B). We find no language in Article 1915(B) which requires an evidentiary hearing on this issue, nor is there any such requirement in this court's remand order. The trial court had the benefit of reviewing the record of the trial court and it determined by supplemental judgment that there was no reason for delay as required by La. Code Civ.P. art. 1915(B). Accordingly, we find that the supplemental judgment was properly amended in accordance with La. Code Civ.P. art. 1915(B), and, as such, is properly designated as a final judgment.

Escrow Account
Res judicata has two aspects: (1) claim preclusion, which bars the entire action; and (2) issue preclusion, also called "collateral estoppel," which bars relitigation of issues actually adjudicated in, and essential to the judgment of, a prior action. Vastar Resources v. Popich Bros. Water Transp., 920 F.Supp. 694 (E.D.La. 1995). The criteria used to determine whether a party is precluded from relitigating an issue are: (1) whether the issue at stake is identical to the one involved in the prior litigation, (2) whether the issue was actually litigated, and (3) whether the determination of the issues was necessary to the judgment in the prior litigation. Id.
An escrow account was established pursuant to an escrow agreement dated December 4, 1990, executed by and between McDonald and C&B. The escrow arrangement was worked out between the parties whereby McDonald set aside funds totaling $700,000. These funds had been designated as "bonuses" payable to McDonald by C&B out of the proceeds of the sale to Hanover. These "bonuses" were escrowed pending an investigation by the parties and the resolution of the problems regarding McDonald's concealed involvement with COI. The escrow agreement between McDonald and C&B contemplated that C&B would attempt to determine whether McDonald's activities had harmed C&B following which the parties would attempt to negotiate a settlement of any claims C&B may have against McDonald. Settlement negotiations never came to fruition and suit was filed in federal court on June 14, 1991.
Appellants assert that the trial court erred in granting summary judgment because a genuine issue of material fact exists as to the ownership of the escrow account. We find no merit to this argument. In the federal court proceeding, the trial court ruled in favor of C&B and awarded damages. The damages awarded by the trial court included the escrow account. In its written reasons for judgment, the trial court stated that the facts establish the money was McDonald's and McDonald voluntarily placed the money in an escrow pending resolution of the dispute.
Furthermore, on appeal, the Fifth Circuit Court of Appeals found there to be no nexus between the damages sustained by C&B and the escrow account. In reaching this conclusion, the court found that the funds in escrow were "McDonald's share of the profits on the sale of C&B" and awarding such as damages would not be taking away the value that he purloined from the company, "but instead the value that he obviously worked hard to impart to it."
Accordingly, we find that both the federal trial court and court of appeals agreed that the funds in escrow are McDonald's. It was the very fact that the funds belonged to McDonald from his share of the profits as a stockholder from the sale of C&B that the Fifth Circuit reversed the *1263 original damage award by the trial court. The federal court has decided the issue of ownership of the escrow funds, and this issue was actually litigated, was critical in the outcome as it relates to the damages awarded, and was resolved in favor of McDonald. Accordingly, we find the issue of ownership of the escrow funds to be barred by res judicata. Thus, we agree with the trial court's finding that no genuine issue of material fact exists as to the ownership of the escrow account.

Decree
For these reasons, the judgment of the trial court dismissing Defendants'/Appellants's reconventional demand is affirmed. All costs of this appeal are assigned to Defendants/Appellants.
AFFIRMED.